IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

$17,469.00 IN UNITED STATES CURRENCY,

        Defendant.

---

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

---

The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Martha A. Paluch, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

JURISDICTION AND VENUE

1. The United States of America (the United States) has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property involved in the narcotics provisions of 21 U.S.C. §§ 801 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 21 U.S.C. § 881(j), 19 U.S.C. § 1605 and 28 U.S.C. § 1395, as defendant property is located, and the acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is described as $17,469.00 in United States Currency seized on October 15, 2010, from a vehicle belonging to Jason Thompson on Interstate 25 near mile marker 228 near Fort Collins, Colorado ("defendant Currency"). Defendant Currency is currently being held by the United States Marshals Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation, and the observations and investigations of fellow law enforcement officers as reported to me.

5. On October 15, 2010, Fort Collins Police Officer Sean Giddings initiated a traffic stop on a 1995 Infinity with California license plates. When Officer Giddings approached the rear of the vehicle he could smell the odor of fresh marijuana. Officer Giddings observed that the vehicle was dirty, however there were hand prints in the dirt on the trunk lid, indicating someone had recently accessed the trunk.

6. The driver of the vehicle provided a Colorado driver's license identifying him as Jason Thompson with a current address in Breckenridge, Colorado. Thompson also provided a June 2010 California vehicle registration listing him as the owner of the vehicle with an address in Willits, California. Thompson indicated he currently lived in Denver. The insurance card provided by Thompson also listed a Denver address.

7. Officer Giddings asked Thompson where he was coming from, to which he replied he was coming from Cheyenne, Wyoming where he went to look at a pickup that was for sale, and that he was headed back to Denver. Officer Giddings observed that Thompson appeared extremely

nervous; avoided making eye contact with the officer, and his hands were shaking when he handed his paperwork to the officer. The vehicle appeared to have a "lived in" look with multiple drink bottles, multiple packs of cigarettes, snacks, and food wrappers, which was consistent with someone who had been on a much longer drive than just a few hour trip from Cheyenne, Wyoming, to Denver, Colorado. In addition there was just a single key in the ignition, which also appeared odd to Officer Giddings as Thompson had owned the vehicle for several months. Officer Giddings also observed an air freshener hanging from the rear view mirror and a bottle of perfume or air freshener in the passenger door pocket, commonly used to mask the odor of illegal narcotics.

8. Officer Giddings checked to verify if Thompson had any outstanding warrants and his driver's license status, which revealed no current warrants and a valid license. A criminal history check revealed that Thompson had several previous marijuana related arrests, including felony arrests for distribution, transportation, and smuggling in Colorado, Utah, and California. Officer Giddings returned to Thompson's vehicle and asked him to step out of the vehicle. Officer Giddings again smelled the odor of fresh marijuana when he approached the rear of Thompson's vehicle.

9. When again asked for his address by Officer Giddings, Thompson indicated it was the one on his license, which was in Breckenridge, contradicting his earlier statement that he lived in Denver. When Officer Giddings asked Thompson about what kind of truck he had looked at in Cheyenne, he hesitated, was even more nervous in that he couldn't stand still and only answered "a diesel" and was not able to provide a brand until Officer Giddings gave him examples of Ford or Chevy and then Thompson said "F350 Ford." Officer Giddings asked Thompson what he did for a living and he stated he was a ski representative and sold skis. Officer Giddings then asked Thompson why he needed such a large diesel truck and Thompson replied that he needed a four

wheel drive to get to his house which was in a rugged area in the mountains. Again this contradicted his earlier statement that he lived in Denver and was not consistent with his Main Street address in the town of Breckenridge on his driver's license. While Officer Giddings was completing the written traffic warning, Thompson suddenly revealed he had a job interview in Denver in an hour and was in a hurry. Once Officer Giddings gave Thompson the written warning and returned his information. Thompson appeared to relax considerably and continued to engage Officer Giddings in conversation. He showed Officer Giddings a hat he had in his vehicle explaining that a friend had created the design, talked to Officer Giddings about snow conditions in the mountains, and became overly friendly and wanting to continue the conversation. This behavior was totally inconsistent with his early statement that he had a job interview in a hour.

10.     Based on the above factors, Officer Giddings asked Thompson for consent to search his vehicle. Thompson did not respond to the officer. When asked a second time he continued to look away, did not answer the officer, and visibly became nervous, started shuffling his feet, swinging his arms, and mumbling. He walked toward the front passenger door of his vehicle, opened the door, and started talking about something unrelated. Officer Giddings asked him for a third time for consent to search the vehicle, and Thompson again did not respond, but mentioned the job interview, clearly avoiding the question.

11.     Officer Crumbaker arrived on the scene to assist Officer Giddings. Officer Giddings told Thompson that he could smell marijuana coming from his vehicle and asked Thompson if there was marijuana in the vehicle. Thompson again looked away and just shook his head. Thompson was asked if he had anything illegal on his person and he didn't respond but started reaching in his pants pockets and handed Officer Giddings a cigarette box that contained a small amount of

marijuana. Based on all the factors, including Officer Giddings being able to smell the odor of fresh marijuana coming from the vehicle, Officer Giddings had reason to believe that the vehicle contained marijuana and therefore, told Thompson he was going to search his vehicle. While Officer Giddings was searching the vehicle Officer Crumbaker asked Thompson several questions and Thompson told Officer Crumbaker that he had not yet received his medical marijuana card, but it was in the mail. He indicated he needed a medical marijuana card because he had a bad back and knees. Thompson could not provide Officer Crumbaker with the location of his meeting/interview only that he was meeting with Adrian. He said he was coming from Cheyenne after looking at a truck. He told Officer Crumbaker that he lived in Denver, then immediately changed his answer and said he lived in Breckenridge. Thompson told Officer Crumbaker that he had cash with him to purchase the truck, then immediately changed his answer and said he put some of the money back in the bank before heading back towards Denver. When asked how much money he had, he indicated he did not know. When asked how much he was prepared to pay for the truck he said $8,000.00. When asked if he had the $8,000.00 in the vehicle he said "yeah."

12.     Officer Giddings began to search the vehicle and observed several large bags in the back of the trunk, which contained a large amount of marijuana packaged in additional plastic bags. The marijuana weighed 19.8 pounds. Thompson was advised of his Miranda Rights, indicated he understood his rights and chose to continue speaking with officers. He acknowledged that he knew he was transporting marijuana and said he was transporting it from Ukiha, California, to Denver. He said he was being paid $5,000.00 to $6,000.00 to drive the load of marijuana for someone else. He changed his story and then said he had purchased the marijuana and had paid $3,000.00 to $4,000.00 per pound depending on the different strains. He said he didn't know the total weight of

the marijuana but estimated it to be 10 pounds. Thompson also indicated it was not medical marijuana saying "it's a lot more than you can have legally" and he admitted he did not have any type of medical marijuana card.

13. Thompson was vague about the details of where he got the marijuana and who he was delivering it to, clearly not wanting to reveal any sources. He did indicate that he was going to owe someone a lot of money. Thompson told Officer Giddings that he flew from Denver to California a few days prior, picked up the vehicle which he had purchased on an earlier trip in Ukiah, California. He said he dropped off the vehicle in a parking lot on 1-80 in Cheyenne, Wyoming, about midnight the previous night and was later contacted on his cell phone that the vehicle was now loaded with marijuana. Thompson indicated he stayed in a hotel in Cheyenne that night. Once in Denver he was going to be contacted on his cell phone and told which parking lot to leave the vehicle where someone would then come and retrieve the marijuana. Thompson admitted that he was on his way to Denver when Officer Giddings stopped him. Thompson also admitted to previously transporting marijuana, but said this was the first time in several years he had done it. Thompson was placed under arrest, and as he was being placed in the patrol car Thompson stated with frustration "following someone too close is going to ruin my life."

14. The marijuana found in the trunk was in several large bags, each bag containing smaller sealed plastic bags containing marijuana. Many of the individual bags of marijuana were labeled with strain names including: Mr. Nice," Sugar Daddy," "PH," "BBK," "Mowe," GK," and "BD." In addition to the marijuana, defendant currency was found in the trunk in a bag containing clothing, inside of a beanie that had been tied together at the top. The denominations were mostly $100 and $20 bills. In addition, several hundred dollars in cash were located in the pockets of a vest

inside the car. Thompson had initially claimed he had $8,000.00 in cash in his possession. The currency totaled $17,469.00.

15. In addition to the marijuana and defendant currency, an envelope containing drug ledgers was found. The ledgers contained names, marijuana strain names, weights, and monetary amounts indicating marijuana sales in the tens of thousands of dollars. The strain names of the marijuana matched the strain names on the marijuana Thompson was transporting. Receipts were also found that confirmed Thompson's recent travels to northern California, previous and recent travels to northern California earlier in the summer, and Thompson's boarding pass and receipt confirming his recent flight to California on October 8, 2010.

16. A follow up interview was conducted with Thompson at the Fort Collins Police Department after he was again advised of his Miranda Rights. Thompson signed a waiver and indicated he wanted to continue talking with officers. Thompson continued to be very vague about the details of his trip and claimed he was hired by unknown people who found and approached him about working for them. He again said he was getting paid to transport the marijuana, changing his story that he had purchased the marijuana. He also claimed he didn't know any phone numbers for the people he worked for and they didn't know his number. He said he communicated with them by pay phones at predetermined locations, yet he didn't know where he was supposed to get the next call in Denver and didn't know the location of his last call, other than it was at a rest area. He now indicated he couldn't even remember which state he was in when he picked up the car loaded with marijuana.

17. When asked about defendant currency Thompson stated it was $8,000.00 and he was going to use it to buy a truck in Wyoming, claiming he brought several thousand dollars with him

when he flew to California. He claimed he withdrew the money from his bank account, but could not provide a receipt or statement to show the withdraw and indicated he wouldn't have one. He then said his girlfriend gave him an additional several thousand dollars, but wasn't sure how much it was and only could identify her by a first name and said he rarely saw her.

18. A certified drug detection caning alerted positively to defendant currency indicating the recent presence of controlled substance.

19. Thompson was charged with Possession With Intent to Distribute Five to One Hundred pounds of Marijuana and Money Laundering by the State of Colorado, Larimer County in case number 2010cr001497 and is currently set for a Disposition Hearing on April 25, 2011.

20. A check of data bases for reported wages revealed no reported wages for Thompson.

21. Thompson has an extensive drug related criminal history dating back to 1990, including a 1992 California felony conviction for selling marijuana for which he served 31 days in jail and 36 months probation, a 1999 Utah marijuana possession and smuggling conviction for which he received 1 year probation.

22. In addition, in 2003, Thompson was stopped by Colorado State Patrol for speeding. A subsequent search of his vehicle revealed marijuana and a large amount of currency, totaling $15,560.00. A civil forfeiture action was filed in United States District Court for the District of Colorado (03-CV-01260-CAB) seeking forfeiture of the currency as drug proceeds. A Final Order of Forfeiture was entered and the currency was forfeited to the United States.

23. The facts set forth above are not all of the facts known to the investigation, but are sufficient to establish probable cause to believe the defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

<u>VERIFICATION OF TASK FORCE OFFICER ADAM MCCAMBRIDGE</u>
<u>DRUG ENFORCEMENT ADMINISTRATION</u>

I, Drug Enforcement Administration Task Force Officer Adam McCambridge, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein is true to the best of my information and belief.

                                              s/ Adam McCambridge
                                              Adam McCambridge, Task Force Officer
                                              Drug Enforcement Administration

STATE OF COLORADO         )
CITY AND                       )ss.
COUNTY OF DENVER       )

The foregoing VERIFIED COMPLAINT FOR FORFEITURE *IN REM* was subscribed before me this 5th day of April, 2011, by Adam McCambridge, Drug Enforcement Administration Task Force Officer.

                                              s/ Pamela S. Jebens
My Commission Expires 3/19/2012       Notary Public, State of Colorado

<u>FIRST CLAIM FOR RELIEF</u>

24.      The Plaintiff repeats and incorporates by reference each of the paragraphs above.

25.      By the foregoing and other acts, defendant $17,469.00 in U.S. Currency constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

SECOND CLAIM FOR RELIEF

26.     The Plaintiff repeats and incorporates by reference each of the paragraphs above.

27.     By the foregoing and other acts, defendant $17,469.00 in U.S. Currency constitutes proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

THIRD CLAIM FOR RELIEF

28.     The Plaintiff repeats and incorporates by reference each of the paragraphs above.

29.     By the foregoing and other acts, defendant $17,469.00 in U.S. Currency constitutes money used or intended to be used to facilitate a violation of violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

Respectfully submitted this 5th day of April, 2011.

JOHN F. WALSH
United States Attorney

By: s/ Martha A. Paluch
Martha A. Paluch
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
FAX: (303) 454-0402
E-mail: martha.paluch@usdoj.gov
Attorney for Plaintiff